## JANVRIN *v.* FOGG.

If a mortgagee take possession of personal property under his mortgage without any other contract, he cannot hold the property as *pledgee,* if the mortgage prove to be void.

If such mortgage proves to be void as against the mortgagor's creditors, on account of the fraudulent intent of the parties to the mortgage, such creditors may take and hold the property discharged of any lien of the mortgagee, thus holding the property under the mortgage only.

Possession by the mortgagee of personal property mortgaged, answers instead of the record of the mortgage. But whether the mortgage be recorded, or possession of the property be taken under it, the affidavit required by statute, must be taken and subscribed by both the parties thereto.

Where certain acts of the plaintiff have been proved for the purpose of asking the jury to find the existence of fraud on his part, he may be allowed to state the reasons why he did the acts in question, with a view to rebut the presumption of fraud.

The rule now adopted by this court, is that when a general verdict depends upon the finding of several disputed facts or questions, some of which were not and could not have been affected by any error in the ruling of the court, others of which were or may have been thus injuriously affected, the verdict will not be wholly set aside and the case thrown open again to a new trial on all points ; but such findings of fact as have been had upon the merits, and to which no valid objection can be made, shall remain undisturbed, and the verdict shall be set aside and a new trial granted, only on those points necessary to correct some error or mistake.    Bellows, C. J , dissenting.

And when the court can see, that the only question of fact in the case has been submitted to and settled by the jury, under some mistaken ruling of law in precisely the same manner and upon the same evidence, that it must have been submitted and settled, had the ruling upon the law been correct the verdict will not be set aside.

Amendments, to be passed upon by the court and which could not affect the finding of the jury, may be made after verdict, and judgment then rendered upon the verdict.

And if amendments may be made, in the cause itself, after verdict, they may also be made in the testimony relating to the competency of records or other papers used in evidence in the cause, where they are not of a character to affect the finding of the jury and are addressed to the court alone.

Where a mortgage of personal property was introduced in evidence, which proved not to be sufficiently stamped, so as to make it competent.    Held, that this evidence of competency, being addressed only to the court, and being such that it could not have affected the verdict of the jury, may be supplied by properly stamping the mortgage after verdict and where that was the only ground of objection to the evidence, judgment will then be rendered upon the verdict.

REPLEVIN, by George Janvrin against Andrew J. Fogg, a deputy sheriff, for goods,which he had attached, April 3,1867,as the property of one Albert Janvrin, a son of the plaintiff, on writs in favor of certain creditors of Albert, said creditors being merchants of Boston and being the defendants in interest.    The plaintiff's writ was dated April 3, 1867, and was served April 5, 1867.    The only question was, whether plaintiff's claim to the goods was fraudulent as against creditors of Albert.    The plaintiff introduced, and relied upon, a mortgage of goods from Albert to himself, dated April 2, 1867.    The condition of the mortgage was to secure certain notes before that time, given by Albert to plaintiff and to indemnify plaintiff ''against all loss, costs or damage as endorser upon'' certain other notes before that time, given by Albert to other persons.    The affidavit of

plaintiff and Albert, upon the mortgage was, "we severally swear that the foregoing mortgage is made for the purpose of securing the debt and liabilities specified in the condition thereof, and for no other purpose whatever; and that the said debt and liabilities were not created for the purpose of enabling the mortgager to execute said mortgage, but is a just debt honestly due, and owing from the mortgager to the mortgagee and said liabilities were honestly incurred by the mortgagee for the mortgager." Plaintiff's evidence tended to show, that on said second day of April, Albert owing the notes named in the mortgage, suits were brought on said notes and said goods were attached, and then, for the purpose of saving the cost of so many suits, they were all discontinued, the attachments dissolved, said other notes endorsed by plaintiff, and said mortgage was then given, the security by endorsement of the notes, and by the mortgage being substituted for the security, by the attachments, and being all one transaction. The court asked the plaintiff's counsel if the endorsement of the notes was made for the purpose of being secured by the mortgage, and received an affirmative reply. Whereupon, the court instructed the jury that the mortgage was void. Plaintiff's evidence tended to show, that he took possession of the goods, with the consent of Albert, as soon as the mortgage was made, and the court instructed the jury, that if they found that plaintiff had possession of the goods, in pledge, without fraud, he was entitled to a verdict, and that if plaintiff took and held possession of the goods, with Albert's consent, without fraud, for the purpose of securing plaintiff's claim against Albert, plaintiff could recover as pledgee, although he and Albert understood that he took and held possession as mortgagee only; and although he had not, before the trial, claimed the goods as pledgee, and defendant excepted. Defendant requested the court to instruct the jury, that if plaintiff held the property in dispute as a pledge from Albert, and while so holding it, set up the void mortgage and claimed to hold under it, it would be fraudulent as against creditors which instructions the court declined to give, and defendant excepted. Plaintiff proposed to testify that he offered to pay the Boston creditors of Albert, forty-five per cent. of what Albert owed them, and that he made that offer because Albert was his only son, and he wanted to get him out of debt and make him a free man. The court ruled *pro forma* that plaintiff might give this evidence, and he did so testify, and defendant excepted. Defendant had previously introduced a letter from one Batchelder, as the agent of plaintiff to one Osgood, authorizing him to pay forty per cent. upon Albert's Boston claims, if they could be settled for that amount. This had been admitted, subject to plaintiff's exception, as bearing upon the question of fraud in the transaction between plaintiff and said Albert.

Defendant objected to the admission of the mortgage in evidence, on the ground that it was not sufficiently stamped. The mortgage had upon it, cancelled stamps amounting to $2 and uncancelled stamps amounting to seventy-five cents. The consideration stated in the

mortgage, was $2,299.69. The notes named in the mortgage, were as follows, all on demand with interest :

| George Janvrin, | November 28, 1865, | $1,448.00 | $0.75 stamp. |
| " | June 27, 1865, | 851.69 | .45 " |
| " | September 18, 1866, | 100.00 | .05 " |
| John Tilton, | June 1, 1864, | 300.00 | .10 " |
| Joseph F. Hayes, | February 14, 1867, | 75.00 | .05 " |
| Jno. S. Hayes, | " 6, 1867, | 40.00 | .05 " |
| " | March 18, 1867, | 182.00 | .10 " |
| " | February 13, 1866, | 200.00 | .10 " |
| Sarah Willey, | April 2, 1866, | 800.00 | .40 " |
| Jas. J. Wiggin, | June 8, 1866, | 200.00 | .10 " |
| Daniel Sanborn, | February 4, 1867, | 100.00 | |
| Maria R. Scammon | April 9, 1867, | 200.00 | .10 stamp. |
| Mark Carr, | December 25, 1865, | 100.00 | .05 " |

The Daniel Sanborn note was not produced, and there was no evidence in relation to it. The mortgage was received in evidence subject to the defendant's exception. The verdict was for plaintiff, and defendant moved to set it aside. The mortgage and notes are of the case. If the verdict should be set aside, the court reserves the question, whether the mortgage was void.

*Case reserved.*

*Hatch* and *C. U. Bell*, for defendants.

I. The mortgage was void.

1. On account of the affidavit which was false, and so the mortgage lacked a valid oath ; and which was also perjury, as contrary to what the parties knew at the time.

2. Because the mortgage was contrary to the spirit of the law, as indicated by the affidavit and other provisions, and also was made to the mortgagee as a trustee for other creditors. *Parker* v. *Morrison*, 46 N. H. 280 ; and was an assignment for the benefit of his creditors, and should have been in the statute form.

II. The mortgage being void, the plaintiff could not hold as pledgee, and the court's instruction to that effect was wrong.

1. A pledge and a mortgage are essentially different contracts. 4 Kent. Com. 138* ; 1 Par. on Con. 594–9*.

2. If there is a real difference between them, the court was wrong in instructing in substance that what the parties always intended for a mortgage was a pledge. For the parties make the contract, and the court cannot substitute a new one for it. If men blunder in their choice of means to reach their ends, the court cannot bend the facts to help them.

Where a man makes a written instrument, he and the court are governed by the contract he really makes ; though he may have intended to make a different one. But here the parties made an instrument which exactly expressed their meaning ; yet the court disregarded not only the intention of the parties, but that intention

accurately expressed in writing over their hands, seals, and oaths. For what reason? Because the contract they did not make was one which if they had made, they would more effectually have accomplished their division of Albert Janvrin's property. There are no authorities to justify such a substitution of one contract for another. 2 Par. on Con. 16, 17*.

In the cases in our reports, where the validity of a personal mortgage was contested and possession had been taken, there is no suggestion of the possibility of holding the property as a pledge. Morse v. Powers, 17 N. H. 286; Lathrop v. Blake, 23 N. H. 58.

3. When the legislature prohibited such an instrument as the Janvrins made, was the objection to the form of the instrument or to the transaction which that instrument expressed? Why should the legislature forbid the written and recorded contract but allow in its place an indefinite parol contract, different in character, but accomplishing the same end? If any contract was to stand which was contrary to the spirit of the law, why did they not leave the written one, which would give creditors notice? The intention must have been to prohibit such a transaction as the parties here entered into, entirely, and·leave the property open to the process of the law.

III. If the party who held the goods set up false titles to them and mislead creditors to their injury, it was a fraud on them, and he is estopped from relying on any other.

IV. The offer which the plaintiff made the Boston creditors, including among others the defendant and his intention in making it had a direct bearing on the question of fraud, in fact. It tended to convince the jury of the honesty of his intentions and his liberality. It being· an act only incidentally connected with the issue in this suit, was no more admissible to rebut fraud than other benevolent or honest acts of the plaintiff.

V. The U. S. Satutes declared that instruments not stamped shall not be admitted or received in evidence in any court. U. S. Stats. July 13, 1866 § 9.

Any court, must mean,any court, either United States or state, for Congress had clear power, the language is broad enough, any other construction would not carry out the purposes of the law, and would make two laws on the same subject in one state. The Massachusetts decisions are evasions of the plain meaning of the law, and not supported by reason.

2. The mortgage was not sufficiently stamped. Uncancelled stamps are not to be counted. The amount secured by the mortgage was $4,900, and the stamps required $5. If every stamp was counted, they would amount to $5.05. But there are to be deducted .75 uncancelled; the stamps on the Janvrin notes, for they were put on long before, while the statute clearly requires that at the execution of the mortgage the full amount of stamps be put on it or the notes, and the stamps on the notes indorsed for the same reason, and because they were on a different contract between different parties; the notes from A. Janvrin to the payees, and not the guaranty from

G. Janvrin to the payees, which was secured by the mortgage. whether that guaranty required stamps or not, a mortgage to secure it must be stamped in full. Therefore only $200 worth of stamps count.

*J. F. Wiggin,* and *Wheeler & Hobbs,* for plaintiff.

The first question in this case is, shall the verdict be set aside?

The answer to this question, as we understand the case, depends upon the correctness of the ruling of the court upon two points only: The rights of the plaintiff to retain the goods in pledge, as against the defendant, he having supposed he held the goods by a valid mortgage, which the court pronounced void; and the admission of the plaintiff's testimony, that he offered to pay the creditors forty-five per cent., and his motive for so doing. The question whether the mortgage was improperly received in evidence for want of sufficient stamps properly cancelled is of no consequence in answering this question, as it was subsequently ruled by the court to be a void instrument for other reasons, and the jury so instructed. *Judge of Probate* v. *Stone,* 44 N. H. 593.

The court was requested and refused to instruct the jury, "that, if the plaintiff held the property in dispute, as a pledge from Albert, and while so holding it, set up the void mortgage, and claimed to hold under it, it would be *fraudulent* as against creditors." The court had, previously, instructed the jury in substance, that, if the plaintiff had been put in possession of the goods by Albert, without *fraud*, for the purpose of securing his claims, though he and Albert supposed that he held possession by virtue of his mortgage, yet his title by *possession* would not be invalidated by the fact that he received at the same time, a worthless *paper* title from Albert. It is entirely clear, that the facts which the jury must have found, under the instructions of the court, were sufficient to give the plaintiff a valid title as *pledgee.* They must have found that there was no *fraud, in fact.* The court then, was asked to rule, that, because the plaintiff believed and claimed that he had the *legal title,* in addition to his *lawful possession,* it was a *fraud in law* upon the creditors. The only legal principle that occurs to us, upon which it could be supposed that the ruling asked for could be founded, is that the plaintiff, having previously claimed the goods by a title which proved to be unsound, was estopped at the trial from setting up another title that was sound. But the case lacks *every element* of an estoppel. There was no *wilful* attempt on the part of the plaintiff to induce the defendant to believe that his title was different from what it proved to be on trial. That is one element. *Odlin* v. *Gove,* 41 N. H. 463, and cases there cited; nor is there the slightest evidence or reason to suppose that the defendant was induced to alter his position, because the plaintiff claimed and believed that his title was that of a mortgagee, and not that of a pledgee. The claim of the defendant is, that the plaintiff's title, whatever it is, is fraudulent and void as against him, and it is

entirely immaterial to his claim, whether the plaintiff was mortgagee in possession, or pledgee. Either title was void, if fraud was shown. And if the defendant, in behalf of the creditors he represents, had chosen to pursue any other course, it could not have made the slightest difference in his proceedings, whether he believed the plaintiff to be mortgagee or pledgee. The remedy for creditors is the same in both cases. Chap. 205, sec. 17, Gen. Stat. There is no practical difference between the rights of a mortgagee in possession, and a pledgee, except as to the right and method of foreclosure, and this has no effect upon creditors, as in either case, they have the privilege, and must redeem the property, and then have the same control over it. Whether the defendant was misled, and so the plaintiff estopped, was a question for the jury, and not for the court. *Odlin* v. *Gove*, before cited. Another reason why the plaintiff is not estopped is, that his title was equally apparent to both parties. His possession was notorious, and his mortgage spread upon the record, and it was adjudged void in law, upon facts well known to the defendant, and those he represents, and avowed openly by the plaintiff. *Odlin* v. *Gove*, before cited. The argument of the defendant that the court substituted one title for another, in our judgment has no foundation in fact. The plaintiff has two titles, one by possession, and another a paper title. The court ruled, that his paper title was void, but his title by possession was valid, and was not affected by the fact that the plaintiff supposed his paper title was good. The argument of the defendant upon the point, which proceeds upon the assumption that the Janvrins made an instrument to secure the property to the plaintiff, which was prohibited by the legislature, and therefore public policy requires his title, otherwise good, to be held invalid, rests upon an unfounded assumption. The Janvrins did make an instrument, that, under the ruling of the court, fails to meet the requirements of the law, but not one prohibited by the law. Upon the same state of facts, it might be argued, that where a person has held possession of land for more than twenty years, claiming under a deed, which he supposed was good, but which was defective as a conveyance, that for that reason his possession is of no avail, which would be contrary to well-settled law. The jury have found that there was no fraud, and the defects or misstatements in the instrument were only proper to be considered by them, as bearing on that question.

Upon the question of the admissibility of the plaintiff's testimony, the defendant by his argument seems to admit, that the evidence was properly admitted, as he says it had a direct bearing on the question of fraud in fact, which was the only real question at issue, and upon that ground it was clearly competent. Offers to compromise, are inadmissible on the ground of public policy, when there is an offer to show them for the purpose of proving that the party making them thereby admitted some liability, but that is not this case. We had supposed that the defendant might claim that the evidence was immaterial, and had a tendency to prejudice his case, and, as this is

the only ground of objection we can discover, we propose to consider if there is sufficient ground of objection on that point, to disturb the verdict. It does not appear in the printed case, but the defendant's counsel will not deny, and the judge who tried the cause will remember, that the defendant had previously introduced in evidence against the plaintiff's exception, as tending to show fraud in the plaintiff, a letter, purporting to be written by an agent of the plaintiff, to another agent, instructing him to settle with the creditors, naming particularly, the creditors represented by the defendant, if he could, for forty per cent., and telling him, if they did not take that, they would not get anything, as the mortgage was good. The production of the letter by the defendant shows, that the parties he represents, had that offer made them, and having brought out the fact himself, that they had an offer of a per centage on their claim, he should not be heard to complain, that the jury were prejudiced by it. That the offer was forty-five per cent. instead of forty, could not reasonably be said to prejudice the jury's mind. But the amount of the offer was of no consequence, this evidence being simply introductory to that relating to the motive with which it was made. The defendant having introduced evidence tending to make that material on the question of fraud, it was competent for the plaintiff to testify directly as to his motive in making the offer. *Hale* v. *Taylor*, 45 N. H. 405. If the plaintiff's evidence, standing alone, was irrelevant, and so incompetent, it was a proper answer to evidence of a similar character introduced by the defendant, and he cannot complain. *Bank* v. *Woodward*, 5 N. H. 301.

But if this evidence stood entirely alone, and had not been introduced to meet testimony offered by the defendant, and admitting it to be entirely immaterial, the verdict should not be set aside, "unless the court can see that it must have influenced the jury in their decision." *Cook* v. *Brown*, 34 N. H. 460, and cases there cited, particularly *Hamblett* v. *Hamblett*, 6 N. H. 333. There are two points to the testimony,—the motive in making the offer, and the offer itself. The motive could have no influence with the jury in deciding the question before them. The most that could be claimed, as is claimed by the argument of the defendant, is that it had a tendency to set forth his character in a favorable light, but that was to be judged by them by his whole testimony, and the other evidence in the case. If it stood well, judged by that, it did not need the support of this evidence given by himself, if it did not, this testimony of his would be disregarded by them with the rest of it. The fact that the defendants in interest have had an opportunity to get forty-five per cent. of their claims, could have no proper influence upon the decision of the jury, and the court, certainly, should not infer that the jury decided the cause upon the very improper motive, that the defendants having refused to take forty-five per cent. of a claim admitted to be just, should therefore lose the whole claim. To sum up the matter, we say that the evidence was competent, upon the defendant's own argument, as bearing directly on the question at

issue; that if irrelevant and immaterial, standing by itself, it was relevant and material as a proper answer to testimony introduced by the defendant; if this testimony was incompetent, he cannot complain, that it was answered by testimony of the same kind; that, standing alone, the only objection to it is, that it is entirely immaterial, and the court cannot say, that it could have any influence upon the jury without deciding that they acted on improper motives.

But if the verdict should be set aside, then we say that the mortgage was valid. First, as a common law mortgage, as possession was taken and retained by the mortgagee, and no affidavit or record was needed. Chap. 123, sec. 12, Gen. Stat. As the affidavit was not wilfully false, and did not mislead and defraud the creditors, if either of these was claimed it should have been left to a jury to decide, it was mere surplusage, and the instrument was a good common law mortgage. Possession by the express words of the statute is equivalent to an oath and record. It was originally held, after some discussion, that possession was not essential to the validity of a personal mortgage. This left the door wide open for pretended transfers, and the legislature required a record, if possession was not taken. This added no safe guard, but the trifling expense and trouble of procuring the mortgage to be recorded. The legislature then required an oath to the good faith of the transfer. Aside from sec. 12, it might be an open question whether the oath was not required in all cases whether possession was taken or not, but that section we think clearly makes possession equivalent to both, and for the best reasons; for, when the mortgagee takes and keeps actual possession of the property, it is the strongest evidence of the genuineness of the mortgage.

But we claim further that the affidavit was true, and the mortgage valid under the statute. What was the mischief which the statute requiring the affidavit was intended to suppress, for that is always to be regarded in construing remedial statutes? Undoubtedly to prevent pretended transfers of property made for the purpose of putting it beyond the reach of creditors. The history of the decisions and legislation on this subject, given in *Hill* v. *Gilman*, 39 N. H. 88, renders that entirely clear. The original act confines it to mortgages of personal property liable to attachment and execution. What is the real meaning of the oath that the parties are required to. take and subscribe? First, that the mortgage is made for the purpose it purports to be made, to secure the debt or liability specified in the condition thereof, and not to cover up the property from attachment, when the debt or liabilty, if either exists, is amply secured some other way. Second, that the debt or liability is a real, genuine one, and not a fictious pretended one. One meaning of the word create, is to call into existence out of nothing; applied to a debt or liability in this sense, it would mean to make a debt or liability without consideration, which would be no debt or liability in fact, or in law. The following clause, " but is a just debt honestly due and owing, &c.," shows that the word create is used in that sense. It is ap-

pended to explain and make clear the meaning of what precedes, and not to add to it.   If the purpose was to add something, not previously expressed, the word and, and not the word but, would be the proper connecting word.   " The great object of the statute is the verification of the justice of the debt, as the debt of the mortgager." *Lathrop* v. *Blake*, 23 N. H. 46.   The construction given to the affidavit depends, as we say, upon a literal, technical construction of the sentence, " that the liabilities were not created for the purpose of enabling the mortgager to execute said mortgage," without considering connecting clauses, or the purpose of the law requiring the affidavit, and we submit cannot be supported even in this view.   The real transaction was this,—the plaintiff and others had attached the property.   The plaintiff thought a mortgage would be his cheapest and best security ; the other creditors were ready to drop their attachments, if the plaintiff would indorse their claims, and Albert was ready to make the mortgage.   The purpose, then, for which the plaintiff's liability was created, was to secure their claims.   The inducement to secure their claims was that they would release their attachments, and then Albert would give him a mortgage.   The real purpose of the parties was to secure the plaintiff in the best possible manner.   That the transactions enabled the mortgager to execute the mortgage, was a mere consequence of the plaintiff's incurring the liabilities, and not the purpose of it.   But we think the court will not adopt such a refined construction of the terms of the oath as was adopted at the trial, a construction which, if followed to its legitimate conclusion, would overturn every mortgage where the agreement to give it as security, was the inducement to contract the debt or liability.

The defendant is estopped from denying that the mortgage was not admissible in evidence, because not properly stamped.   He stands no better than Albert Janvrin under whom he claims, unless he can show that the mortgage was fraudulent as to creditors ; *Smith* v. *Foster*, 41 N. H. 215, and cases there cited, particularly *Smith* v. *Bean*, 15 N. H. 577.   The mortgage was carried into effect by a delivery of the property to the plaintiff.   Albert Janvrin could not take the property out of the possession of the plaintiff, and when he brought the suit to recover it, turn round and say that he could not introduce the mortgage in evidence to show his title to the property, for want of proper stamps.   *Smith* v. *Bean*, before cited.   But the mortgage was sufficiently stamped.   It was security for the " payment of a definite and certain sum of money lent at the time or previously due," only to the extent of the consideration expressed in it $2299.69.   Schedule B. stamp duties.   The amount of stamps required was two dollars and fifty cents.   The amount of stamps on the notes that made up the $2299.69 was one dollar and twenty cents.   The amount properly cancelled on the mortgage two dollars, making more than the law required, as both amounts should be counted.   Sec. 160, Act of June 30, 1864.   The omission to affix a revenue stamp will not invalidate the instrument, unless there is an intent by such omission to defraud the government of the stamp duty.   *Holyoke Machine*

*Company* v. *Franklin Paper Company*, 97 Mass. 150; 50 Barbour 302. Nothing of the kind is suggested in this cause.

The act of Congress that declares, that no instrument not duly stamped shall be used in evidence in any court, applies to United States courts only. *Carpenter* v. *Snelling*, 97 Mass. 452; *Lynch* v. *Morse*, *ib.* 458. Congress has no power to interfere, and fix the rules of evidence to be applied in state courts, and it is not to be presumed, that they have attempted to do so.

*Hatch & Bell*, in reply.

I. The mortgage was within the plain meaning of the words of the law. Plaintiff was a trustee for the payees of the notes, and took the oath, which creditors had a right to demand, that the payees themselves should take, *Parker* v. *Morrison*, 46 N. H. 280.

II. There is no such thing in this state, as a common law mortgage.

Whether the Rev. Stats., chap. 132 § 7, require an affidavit or not, where possession is taken, "such mortgage" in that section, must mean one of the nature provided for, in this chapter; one that could be sworn to. There is no suggestion in the chapter, that the question of possession, or record, goes to the nature of the mortgage, at all.

We contend, however, that according to the analogy of conveyances of real estate, and by § 2 of this chapter, possession is to be of the same efficacy as record, and no more than that, whether possession or record is relied on, the execution must be the same.

The words, such mortgage meaning one sworn to, occur in § 4. The history of the law, supports this construction. The statute of 1832 provided, that thereafter no personal mortgage should be valid, unless possession was taken or the mortgage was recorded: Chap. 80. The statute of 1840 provided, that all personal mortgages, must be sworn to: Chap. 575. Therefore, *then*, possession did not render the affidavit unnecessary. The Rev. Stats. incorporated both these laws, in chap. 132, with only verbal changes, unless it be in § 7, which is taken from § 1, of statutes of 1840, with the insertion of the clause as to possession, to make it conform to the statutes of 1832. The only thing in §7, indicating any intention to change the law, is the insertion of the words "sworn to." But can the reduplication of the requirement of the affidavit in one case, be a repeal of the express law requiring it, in other cases? See, also, the title to the section.

III. The stamp act is not passed under the judicial law, the revenue power of Congress. Congress has power to impose stamp duties and enforce them. It enforces them, by declaring the unstamped instrument void in case of fraud, and in other cases requiring the payment of the duty, before the instrument is used. How else could they effectually enforce their law?

The court will make no distinction, between a man who knowing-

ly neglects to stamp his papers, and one, who, like this plaintiff, when he does find out the deficiency, deliberately refuses to pay the United States what is due them.

SARGENT, J.   In this case, the possession was taken under the mortgage, there was no attempt to make it a pledge, and neither of the parties intended it as a pledge.   We do not need here to decide, that a party could not take possession of property, as pledgee, and then, lest his pledge might fail, he might take a mortgage, and hold under both, so that if one should fail, he might hold under the other, when both parties understood, and intended it to be so.   Whether this would be so, or whether he would be compelled to elect which security he would rely upon, which remedy he would pursue, in fairness to other creditors, is not here material :   See *Haynes* v. *Sanborn*, 45 N. H. 429.

But where the parties made a mortgage, and relied upon that alone, and the plaintiff claimed to hold under it, as a mortgage, and took possession as mortgagee, and held in that capacity alone, never claiming to hold as pledgee, and the matter of the pledge was never thought of by anybody until the trial ; we do not understand how the whole character of the possession could then at once be changed, without some new contract, or how one contract can thus be changed for another, and an entirely different contract without at least the intention of the parties thus to change it.

The character of the possession is entirely different in the two cases.   The pledgee holds property that still belongs to the pledgor, he holds possession of it under a special contract, which simply gives him the right thus to hold it, until his debt is paid.   In case of a mortgage, the right of property is conveyed to the mortgagee, by a perfect title, which title is liable to be defeated by the payment of the mortgage debt, and if the mortgagee takes possession of the property, he takes it as his own, and not as the mortgager's.   The titles to the property, are different in the two cases, and the possession is different, held under an entirely different contract ; neither a mortgage nor a pledge can exist without a special contract, and these contracts being different in their terms, cannot be substituted, the one for the other, unless the contracting parties, in some way, make that substitution, or agree to that change, which has not been done in this case.

Here, the parties have never made any contract but that of the mortgage.   Now, if the mortgage proves to be void, and of no force or effect whatever, as between the parties, or anybody else ; then the plaintiff's title fails wholly, the deed being void, passes nothing, and it leaves the plaintiff with a bare and naked possession of the property without title and without any lien ; the plaintiff's title fails, and that leaves the property belonging to the mortgagor, who may at once claim it, and recover it of him ; or his creditors may take it and hold it, as against the plaintiff, as there has never been any contract between him and the mortgagor, which authorizes plaintiff to

hold it as a pledge or gives him any lien upon it. "Lien is the right of temporary possession against the person who has the right of property, until the claim of the holder respecting it, is satisfied by the owner." Smith on Contracts, *336. A pledge can only be made by some contract, and the lien of the pledgee, is created, and subsists by virtue of such contract. But in this case, no such contract has ever been made. The instructions, upon this point, were erroneous; or, if it be held that this mortgage may be good and valid, as between the parties, but void as to creditors, on account of the fraudulent intentions of such parties towards such creditors, than to hold that as against such creditors, the possession of the property, taken by virtue of the mortgage, might be rightfully held as a pledge, would be giving effect to the fraud, and enabling this plaintiff to hold the property, under a contract, which he did not make, when he could not hold it under the contract which he did make. This substitution of one contract for another, would enable the plaintiff to take the full advantage of his fraudulent act.

We think, they were also erroneous, in regard to the validity of the mortgage. When the plaintiff's counsel stated that the endorsements of these notes, was made for the purpose of being secured by the mortgage, it is perfectly apparent that he meant that this mode of doing the business was adopted rather than some other. for the purpose of convenience in giving the security proposed. He did not, evidently, intend to state, that this signing of the notes by plaintiff, as surety, was simply a sham, that it created no real liability on the part of the plaintiff, for which he could properly secure himself by mortgage. That it was all done for a cover, just to enable him to take the mortgage and thus keep the property of his son from his creditors, when there was no *bona fide* liability incurred by such endorsement of said notes.

What we understand to be required by the oath to a personal mortgage, is that the debt was not incurred, or the liability assumed for the mere purpose of enabling the mortgagor to execute the mortgage, when no honest debt, or liability existed, when the whole transaction was not *bona fide* but *mala fide*, created or assumed for the mere purpose of enabling the mortgagor to thus cover up his property, and keep it from honest creditors.

But when it had been arranged, that for the purpose of saving costs in numerous suits, the father should endorse the son's notes to the son's creditors, and should thereby render himself legally liable to pay those debts for his son, and should take security from his son for his own debt and also for the liabilities thus assumed, the only questions were, was his own debt an honest debt, which he, in good faith, wished to have secured? And were these liabilities by endorsement *bona fide?* Did he assume these liabilities, for the purpose of aiding his son in this matter? And was the mortgage taken in good faith to secure the plaintiff for these liabilities thus incurred, and for the debts which the son owed him?

The fact that the business was done in one way, or another way,

as matter of convenience ; that this form of adjustment was adopted, to enable the parties the more readily to make the security by mortgage, could have no bearing upon the question, as to whether the liabilities were honestly assumed, and the mortgage honestly given, to secure them.

The endorsements of the notes, may have been made "for the purpose of being secured by the mortgage," as stated by counsel without being fraudulently made, or made for the purpose of enabling the mortgager to execute such mortgage, but they may have been honestly assumed, in good faith.

The mortgage was not, therefore, void upon that ground, as matter of law.   But the jury have found that the plaintiff had possession of the goods, without fraud, and held them without fraud, to secure his claims against Albert, which would negative any fraud in the affair.   The mortgage is well enough in form.   The oath verified the condition, according to the doctrine of *Parker* v. *Morrison*, 46 N. H. 280, as the statute required.   Upon an examination of the several provisions of the statutes, we are satisfied that possession of the mortgaged property, will only supply the place of the record of the mortgage ; and, that the affidavit is required in the one case as well as in the other.   The affidavit is made an essential part of the mortgage itself, without which, the mortgage is void as to every person but the mortgager.

The exception to the plaintiff's testimony, in regard to offering forty-five per cent. upon Albert's debts, and the reasons why he did so, cannot be sustained.   The defendant had, previously, introduced the letter of Batchelder to Osgood, on the ground that Batchelder was the agent of the plaintiff, in which he had offered forty per cent. on these, if Osgood could buy them in for that price.   This was offered by defendant as bearing upon the question of fraud in the transactions between plaintiff and his son, said Albert.   The claim must have been, that these transactions between the father and son, were fraudulent in this, that the father had more property of the son in his hands than was needed, to secure him for all his debts and liabilities, so that he could actually afford to pay this forty per cent. upon his son's Boston debts, out of his son's money or property, which was fraudulently concealed in his hands.

To meet this view of the case, it was competent for the father to state, that he had not only offered forty per cent. but forty-five, on these debts of his son, but that instead of his doing so because he held property of the son in his hands fraudulently, it was because he was willing to pay his own money to have his son liberated from this indebtedness, and made a free man ; and that he did this the more readily, as this was his only son, &c.   It was to show, that this offer was made, for reasons, that were sufficient and honest, and that no fraud could be inferred from this act, when the true reasons that prompted the act, were fully understood.   This exception must be overruled.   *Hale* v. *Taylor*, 45 N. H. 405.

Whether the mortgage was properly stamped or not, becomes im-

material here, since after the mortgage was ruled in, as competent, it was afterwards upon another point, ruled out again, so that when the case was finally submitted to the jury, the mortgage was out of the case, and did not go to the jury as evidence, when the case was finally submitted to them by the court. This might properly be done. · *Judge of Probate* v. *Stone*, 44 N. H.593.

But we think, the mortgage was not sufficiently stamped, and before another trial, the plaintiff must take such measures as will ensure the admissibility of the mortgage, by getting the proper leave to stamp the mortgage as much as may be necessary to remove all doubts upon that question, and have the stamps properly cancelled.

Every law of Congress that has been made, so far as we recollect, has provided some way, in which any instrument may be properly stamped, after its execution. And counsel who consult the pockets of their clients, or the convenience of the court, will never suffer any question of that kind to arise, in their cases, but upon any suggestion, that an instrument is not properly stamped, which they desire to use as evidence, they will see that stamps enough are placed upon it to remove all question upon that point. If more stamps than are absolutely necessary, should be placed upon an instrument, it would do no harm.

When this mortgage is again offered in evidence, let it be stamped so that no claim can be made, that it was not sufficient, and the mortgage will then be well enough, so far as we can now see. *Tobey* v. *Chapman*, 13 Allen 123; *Holyoke Company* v. *Franklin Company*, 97 Mass. 150.

Having thus examined the several questions raised upon the case, and stated the conclusions, to which we have arrived in each. The question arises, what shall be the final order in the case? We have adopted in *Lisbon* v. *Lyman*,* Grafton county, on the present circuit, a rule somewhat new in this state, though long since established in some other jurisdictions, that where a general verdict depends upon the finding of several disputed facts or questions, some of which were not and could not have been affected by any error in the ruling of the court, and others of which were or may have been thus injuriously affected, the verdict will not be wholly set aside, and the case thrown open again to a new trial on all points, as the practice has heretofore been; but that such parts of the verdict, such findings of fact, as have been had upon the merits and to which no valid objection can be made, shall remain undisturbed, and that the verdict shall be set aside and a new trial granted only on those points necessary to correct some error or mistake; and that verdicts are to be treated like judgments, awards and other legal proceedings, which may be good in part, and bad in part, in which case the court will, if the position of the case admit of it, preserve that which is good and correct that only which is erroneous. *Winn* v. *Insurance Co.*, 12 Pick. 279.

---

* See post. REPORTER.

In this case, the court committed two errors in their rulings on points of law : 1st, The mortgage was held to be void, which was an error against the plaintiff; 2d, That plaintiff might hold the property as a pledge in case the mortgage was void, which was an error in favor of the plaintiff.

But the only question of fact submitted to the jury, was the question of fraud, and that question would be the same, whether the goods were held under the mortgage, or as a pledge. Where the result is right, though the rulings of the court were erroneous, the verdict will not be set aside. *Stevens* v. *Lyford*, 7 N. H. 364.

If the first part of the instructions, stood alone "that if the jury found that plaintiff had possession of the goods in pledge, without fraud, he was entitled to a verdict," it might be doubtful whether the fact of the existence of the pledge was not submitted to the jury, and if that were so, and there had been any competent evidence, upon which the jury could have found that fact, then their finding settles the whole case, both, that there was a pledge of the property, and that the possession of the property thus held in pledge was without fraud.

But the next sentence in the instructions puts that matter right, which is, " that if plaintiff took and held possession of the goods with Albert's consent, without fraud, for the purpose of securing plaintiff's claim against Albert; the plaintiff could recover as pledgee, although he and Albert understood that he took and held possession as mortgagee only ; and although he had not before the trial claimed the goods as pledgee." This shows that the whole question of pledge was one of law, depending upon these instructions of the court, which instructions we hold to be erroneous. Taking these instructions as the law, as the jury were bound to do ; and they have not passed upon anything but the question of fraud, precisely the same question and depending upon the same evidence, which must have been settled, in determining the validity of the mortgage.

Suppose that the court, instead of making two mistakes, had made none, but had ruled, as we hold the law to be, that the mortgage, aside from the question of stamps, was valid, legal in form, and not void on account of the fact stated by counsel. Then the question of a pledge would not have arisen, and the question would have been, whether the plaintiff held possession without fraud under his mortgage ; and, if so, then he would have been entitled to a verdict. The instructions then would have been, " that if plaintiff took and held possession of the goods with Albert's consent without fraud, for the purpose of securing plaintiff's claims against Albert, plaintiff could recover as mortgagee." The only question to be passed upon by the jury would be as to the existence of any fraud between the plaintiff and his son, and that question the jury, as we have seen, have already settled by their verdict.

They have in fact found that " plaintiff took and held possession of the goods with Albert's consent without fraud, for the purpose of securing plaintiff's claim against said Albert." And that fact, thus

found, would make the mortgage good and binding, if legal and sufficient in form, as we hold it was.

The only element in the instructions given which could be omitted in case of the mortgage, would be "*the consent of Albert.*" In case of a valid mortgage, the plaintiff might take and hold possession of the property, as well without Albert's consent as with it, but in case of a pledge, it would be otherwise. He must have consented to the plaintiff's taking possession as pledgee, and under such a contract as that he would be authorized to hold such possession even as against the pledger, till the debt was paid. But the fact that Albert consented that his father should take and hold possession of all these goods, under a mortgage, could not affect the case in any way, unless it might, under some circumstances, be an indication of fraud or collusion between them.

But the instructions were based upon the fact that both the plaintiff and Albert understood at the time, and all the time up to the trial, that the taking and holding of possession of the goods was under the mortgage only. The consent of Albert must then have been fully considered, so far as it could bear upon the question of fraud, under those instructions, just the same as though the possession were in fact under the mortgage, as it could make no difference, upon the question of fraud, whether the possession was in fact legal or not under the mortgage, so long as both parties understood that it was so. And if the question were again submitted to the jury, under instructions that the mortgage was a valid and legal instrument, and good to convey the property if there was no fraud between the parties to it, as against Albert's creditors; every circumstance must be weighed in settling the question of fraud, just as it was weighed by the jury in settling the same question under the instructions given in this case.

The mortgage being legal in form, and the possession of all the property under it being untainted by fraud, another question would arise which, under the rulings in this case, became immaterial, and that is the question of stamps. We think there are not stamps enough upon the mortgage, that are cancelled, to answer the requirements of the law. We have not been disposed in this state to hold that the law of Congress requiring stamps on legal instruments, &c., in state courts is unconstitutional,* and as this mortgage has not been

---

*See *Green* v. *Holway*, 101 Mass. 243—251 ; *Clemens* v. *Conrad*, 19 Mich. 170—185, and cases cited ; *Sporrer* v. *Eifler*, 1 Heisk. (Tenn.) 633—639, in which it was *held* that the provision in the act of Congress, " that no instrument not duly stamped," &c., " shall be admitted or used in evidence in any court," &c., " applies *only* to courts of the United States ;" and see *State* v. *Garton*, 31 Ind. 1—10. But the drift of the *reported* cases in this state as elsewhere, has been in the opposite direction. See *White* v. *White*, 45 N. H. 121 ; *Garland* v. *Lane*, 46 N. H. 245 ; *Mason* v. *Cheney*, 47 N. F. 24.                                                                    REPORTER.

properly stamped hitherto, the plaintiff is in fault, and must put himself right in that regard, before the mortgage can be received in evidence; but the stamping of the mortgage will raise no new question of fact, nor will it call for any rehearing or refinding of any fact already settled by the jury. Whether the paper is properly stamped or not, is evidence for the court, and not for the jury. In case of amendments which are to be passed upon by the court, they may be allowed after verdict, and judgment may then be rendered upon the verdict. *Howard* v. *Turner*, 6 Greenl. 106; *Buck* v. *Hardy*, 6 Greenl. 162; *Whittier* v. *Varney*, 10 N. H. 291.

If the matter of the amendment might have altered the decision of the jury, or the course of the trial, then the verdict should be set aside. The return of an officer upon an extent, which was introduced in evidence, may be amended after verdict, without setting aside the verdict as the sufficiency of the return was for the court, and not for the jury. *Whittier* v. *Varney*, 10 N. H. 304, because as there stated, if amendments may be made in the cause itself, after verdict, they may be made in matters used as evidence in the cause, where they are not of a nature to affect the finding of the jury.

And in *Stevenson* v. *Mudgett*, 10 N. H. 338, 342, 343, it is held that where a witness, whose competency depended upon the execution and delivery of a release to the plaintiff, was admitted to testify subject to exception, and after verdict it was held that the release was not shown to have been properly delivered, and that, therefore, the witness was improperly admitted, it was held that as this was evidence for the court, and not for the jury, the fact of delivery might be supplied after verdict, and that when that fact was established to the satisfaction of the court, judgment might be rendered on the verdict.

These authorities go fully to the extent that we need to go in this case. The mortgage was ruled in and allowed to go to the jury, so far as the question of stamps was concerned, subject to exception. The competency of this evidence was a question for the court, and could have no bearing whatever upon the finding of the jury. We think this evidence of competency may now be supplied by the addition of stamps, without setting aside the verdict.

The case then stands thus: the mortgage was ruled to be competent evidence to go to the jury so far as the stamps were concerned, we hold that ruling to be wrong, but as the question of competency is one solely for the court, that deficiency may now be supplied, as it can easily be, without setting aside the verdict. The other ruling of the court by which the mortgage was afterwards excluded, we hold to be wrong; but that under the instructions given to the jury, we have seen that they have passed upon the question of fraud, in precisely the same way and upon the same evidence that they would have done and must have done, had the mortgage been held valid, and the case been submitted to the jury, to pass upon the question of fraud, in the plaintiff's taking and holding possession of the goods under the mortgage. The only question submitted to the jury, was the question of fraud between plaintiff and his son Albert, and the decision of

that question must have been the same, and found upon the same evidence, if the case had been properly submitted to the jury, that it was under the instructions that were given, so that we see no occasion to set aside this verdict.

It is therefore ordered, that if the plaintiff produces in court at the next trial term thereof, said mortgage stamped with $5.00 worth of stamps all properly cancelled, and shows that all penalties and forfeitures to the United States Government, incurred by its not having been stamped earlier, have been fully paid or remitted, he shall be entitled to judgment on the verdict in this case, otherwise the verdict will be set aside, and a new trial granted.

In any event, the court will make such order in relation to the costs, as may be just and equitable.

*Bellows, C. J.* dissenting so far as the doctrine of *Lisbon* v. *Lyman,* is applied to this case.